## LACHMAN, et ux. v. CITY OF MIAMI BEACH.

Circuit Court, Dade County.

January 3, 1953.

William L. Pallot of Pallot, Silver & Mulloy, Miami, for plaintiffs.

Ben Shepard, City Attorney, Joseph A. Wanick, of counsel, both of Miami Beach, for defendant.

J. FRITZ GORDON, Circuit Judge.

This is one of ten similar suits filed by property owners in Miami Beach who own various of the 86 lots running north from the property known as the Firestone Estate to the south lot line of the Royal York Hotel, bounded on the east by the Atlantic Ocean, and on the west by Collins Avenue, on the other side of which lies a waterway known as Indian Creek. I have heard all the witnesses and studied

all the evidence in the ten cases, which were consolidated for trial, and a similar decree is being entered in each.

Plaintiffs own lots 13 and 14 of Indian Beach Corporation's Amended Plat and lot 19 of the First Oceanfront Subdivision. They seek an injunction restraining the city of Miami Beach from enforcing the provisions of its ordinance no. 289 which restricts the use of their land to the most restrictive use classification, that is, to RAA and RB single family residences. They also seek a decree requiring the city to permit them to use their land for multiple family or hotel use, known as RE use.

The validity of the ordinance as it applied to their property under the conditions that existed at the time it was enacted in 1930 is not questioned. It may be observed that the ordinance has been on many occasions amended by the city council and that the courts on several occasions have declared certain portions thereof invalid. Plaintiffs contend the ordinance restricting the use of their property is arbitrary, unreasonable, unconstitutional and invalid. They say their property is no longer adaptable to the use for which it is zoned by reason of physical changes in the surrounding areas brought about by the city's phenomenal growth. The city contends the restrictions imposed by the ordinance as they affect plaintiffs' property are reasonable.

When the ordinance was adopted in 1930 the area in which the property is located was strictly residential and surburban, remote from hotels and apartment houses and from heavy traffic. The city's permanent population was 7,000—by 1950 it had increased to 46,000, and an almost constant influx of 125,000 tourists swells its inhabitants during most of the year.

Economic conditions have changed in the city and in the United States generally. There has been a tremendous increase in income taxes since 1930 when the ordinance was passed.

Collins Avenue from 44th street north in front of plaintiffs' land has been widened since 1930, and traffic has increased considerably by reason of the construction of hotels, apartment houses and business districts to the north and to the south thereof, so that it is now a main arterial highway extending from the city's extreme south to its extreme north boundary.

The city has ordained important and material changes in permissible uses of property since then, and now proposes to establish public parks and beaches, one to the north and one to the south in close proximity to plaintiffs' land, which will further increase traffic on Collins Avenue, and further add to the invasion of the privacy of private estate residential property.

The evidence is conclusive that during a period when the development of the entire city has been nothing short of phenomenal, and the city's entire oceanfront available for private construction has been built up, this strip of 86 lots of which plaintiffs' land is a part has been in a state of arrested development. There are 31 homes in the strip, only 7 of which have been built since 1935, and it appears from the evidence that there is little, if any, market for these properties, either for rent or sale as private residences.

The testimony shows that there are only a very few families in the United States with sufficient fortune to keep up a home of the size required to be built on these properties. One witness testified that the taxes on his home came to over $8,000 yearly and that expenditures for insurance and other costs required a total outlay of over $15,000 yearly for taxes, insurance and other costs. He finally had to rent the home, he said, because he couldn't stand the noise and the invasion of his privacy and the upkeep of the property. The highest rent he could obtain for the place was $7,200 a year—which is less than the taxes.

The tax bills on the vacant property involved in this and the other suits, which were placed in evidence, indicate that the tax rates for such vacant property are very high.

I find that the subject property, while it may have been suited for the purposes for which it was originally zoned in 1930, is not today useful or suitable for that purpose. In its present state, under the restrictions imposed by ordinance no. 289, it is unproductive and a source of expense to the owners. I further find that the high taxes on the property would eventually amount to a confiscation thereof.

The evidence is conclusive that if the zoning restrictions are relaxed to permit hotel or apartment buildings thereon the property will increase in value about four times or more, and will be marketable as such, and that the highest and best use of oceanfront land in the city is for hotels, and that the fine hotels on Miami Beach are on the oceanfront. The testimony shows that because of its unusual and large size (where off street parking can be provided) and its location on the oceanfront, the subject property is ideally suited for hotel purposes.

There was testimony before the court that the threat of rezoning accounts for the circumstance that this long strip of oceanfront land has not been further developed. There was no testimony, however, to the effect that such threat to rezone has been made or heard prior to the last four or five years.

The Florida Supreme Court, in City of Miami Beach v. First Trust Co., 45 So. 2d 681, required the rezoning of the Firestone

Estate property which borders the southernmost of the 86 lots. Certainly the lot just north of the Firestone Estate is unsuitable for a private residence, and if it were rezoned then the lot just north of that property would be unsuitable for a private residence —and so on up the entire strip. Litigation by owners of the properties would surely require a multiplicity of suits.

I find that to relax the zoning restrictions imposed by the ordinance to permit hotel and apartment use would not adversely affect the public health, safety or welfare, further that to continue the restrictions imposed by the ordinance against these properties would in effect constitute a taking of property without compensation. Ordinance no. 289 as it affects the subject properties is arbitrary and unreasonable, and therefore unconstitutional.

I find, however, that if hotel and apartment properties are built on all of the properties Collins Avenue will be insufficient to take care of the increased traffic, and that the property owners in all these suits should convey to the city, without cost, a portion thereof to permit the widening of the street.

After hearing all the testimony (and reading by way of review portions of the transcript thereof), after carefully considering the other evidence adduced and the arguments of counsel and their briefs, I have concluded that plaintiffs have fully established and maintained the allegations in their bill of complaint (as amended) by sufficient and convincing evidence, that the equities in this cause are with the plaintiffs and that they are entitled to the relief for which they have prayed.

It is therefore ordered, adjudged and decreed (1) that city of Miami Beach ordinance no. 289 as it applies to the hereinabove described property, restricting it to single family residential use, is invalid because it is arbitrary, unreasonable, oppressive, discriminatory and confiscatory, bearing no reasonable relation to and not required for the general welfare; (2) that the rezoning of the subject property to permit multiple family, hotel and apartment use would not affect the public and general welfare; (3) that plaintiffs are entitled to the relief prayed for in their bill of complaint and defendant is lawfully required to permit any and all uses of the subject properties as permitted in the use district RE and area district 15 under the provisions of Miami Beach ordinance no. 289; (4) that the defendant city of Miami Beach, its officials, agencies, representatives and employees, are hereby permanently enjoined from asserting the provisions of ordinance no. 289 as it purports to restrict the use of the said property; and (5) that the plaintiffs have and recover from the defendant city their reasonable costs expended herein.